## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-LDP10 Commercial Mortgage Pass-Through Certificates, Series 2007-LDP10,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT J. DEPIETRI, SR. and ROBERT J. DEPIETRI, JR., as Trustees of the Rosewood VIII Real Estate Trust,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: 1:10-cv-10920<br><br>LEAVE TO FILE GRANTED ON 7/21/2010 |

### AFFIDAVIT OF SANDRA K. COOK

Sandra K. Cook, under oath, deposes and says:

1.    I am a senior reserve administrator for Midland Loan Services Inc. ("Midland"). Midland was the master servicer of a loan made to Robert J. Depietri, Sr. and Robert J. Depietri, Jr., Trustees of Rosewood VIII Real Estate Trust. The master servicer was responsible for the day-to-day administration of the loan and the handling of payments and disbursements. I was personally involved in the administration of this loan and I am making this affidavit as to facts of my own personal knowledge.

2.    It is my understanding that defendants in this case have alleged that it was the lender that essentially caused defendants to default on its obligations to lender due to a refusal to release funds from reserve accounts to pay for repairs. The allegation is not correct. Defendants did not tender a loan payment that was due on September 1, 2009. On September 9, 2009, notice of our failure to receive that payment was sent to the borrower. See **Exhibit A** annexed hereto.

As of October 5, 2009 the loan payment that was due on September 1, 2009 still had not been received. A notice to that effect was sent on October 5, 2009. See **Exhibit B** annexed hereto.

    3.    Under the terms of the promissory note between the lender and defendants, an event of default occurred if a payment is not made timely and that failure is not cured within five days of a written notice from the lender. A request for a release from the reserve account was not made until October 20, 2009, at a time when defendants were in default of their obligations to the lender. Thus, it was not any action or inaction of the lender or the master servicer that was a refusal to release funds to the borrower; it was defendant's default that caused the lender and master servicer to refuse to make such a distribution. The loan agreement specifically provides that it is a condition to any disbursement from a reserve account that there be no event of default at the time. See Section 6(e) of the Outstanding Issues Escrow Agreement annexed hereto as **Exhibit C**.

    4.    When the master servicer received a request for a disbursement from the repair reserve account, we requested some financial documents. In particular, we asked for 2008 year-end financial statements and financial statements through September 2009, a current rent roll, a copy of the contract reflecting the scope of work with the contractor, and a lien waiver. These requests were hardly onerous or unusual. In my experience working for a master servicer I can say that these are typical requests as a condition to a disbursement. There were several email exchanges in November regarding the documentation that we were seeking and on December 7 there was an email reflecting that the disbursement request had been canceled by the borrower. See **Exhibit D** annexed hereto.

5.    The lender, acting through the master servicer, did not violate any of the terms of the loan agreements with the defendants.  As set forth above, all of the actions taken by the master servicer were authorized under those loan documents.

Signed under the pains and penalties of perjury this 9th day of July, 2010.

/s/ Sandra K. Cook   *Sandra K. Cook*
Sandra K. Cook

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants, as identified on the Notice of Electronic File ("NEF"), and paper copies will be sent to those indicated as non-registered participants on July 20, 2010, by first class mail.

/s/ Peter S. Brooks
Peter S. Brooks

3

# EXHIBIT

# A

# ☉ MIDLANDLOANSERVICES

September 9, 2009

Rosewood VIII Real Estate Trust
c/o The Rosewood Companies / Robert J Depietri, Jr
40 Mechanic Street, Suite #300
Marlborough, MA 01752

Re:  Midland Loan Services Loan #: 940953050
       Property Address:              63-65 South Street - Hopkinton
                                              63-65 South Street
                                              Hopkinton, MA 01748

Dear Borrower.

This is to advise you that your monthly payment has not been received as of the date of this
notice. Please send your payment immediately or contact a Midland collection representative at
(800) 327-8083. Receipt of the payment in full prior to the expiration of any applicable
grace period will avoid imposition of late charges, default interest and/or other additional costs.

If payment has already been sent, please disregard this courtesy notice.

|  |  |
|---|---|
| DATE DUE | 09/01/2009 |
| DUE AMOUNT | $36,914.11 |
| LATE CHARGES | $1,368.63 |
| TOTAL DUE | $38,282.74 |

# EXHIBIT
# B

# ⊘ MIDLANDLOANSERVICES

October 5, 2009

Rosewood VIII Real Estate Trust
c/o The Rosewood Companies / Robert J Depietri, Jr
40 Mechanic Street, Suite #300
Marlborough, MA 01752

RE:     Payment Delinquency Notice
        Midland Loan Number:        940953050
        Primary Property Address:   63-65 South Street - Hopkinton
                                    63-65 South Street
                                    Hopkinton, MA 01748

Dear Borrower:

Your loan payment, due 09/01/2009, has not been received.

The total amount now due is $38,282.74 including late fees. Please send this amount
immediately. If you have financial or other payment difficulties, please call a Midland collection
representative at (800) 327-8083 to discuss your loan situation.

Your failure to make payments in a timely manner may result in the current noteholder
assessing default interest and pursuing other collection remedies under the loan documents.
The loan will be transferred to the special servicer, which may issue a notice of default and
pursue a receivership action.  Any costs and expenses incurred by the current noteholder,
including but not limited to legal expenses, special servicing fees and third party report fees,
would be the responsibility of the borrower to pay.

If full payment has already been made, please disregard this letter.

Sincerely yours,

Midland Loan Services, Inc.
Collections Department

# EXHIBIT C

Loan No.: 94-0953050

## OUTSTANDING ISSUES ESCROW AGREEMENT

THIS OUTSTANDING ISSUES ESCROW AGREEMENT (the " Agreement") is made as of February 19, 2007 between PNC Bank, National Association, in its capacities as lender and escrow agent ("PNC Bank"), and Robert J. Depietri, Sr. and Robert J. Depietri, Jr., as trustees of the Rosewood VIII Real Estate Trust ("Borrower").

### RECITALS

A.     Contemporaneously with this Agreement, Borrower has executed and delivered its Promissory Note (the "Note") to PNC Bank evidencing PNC Bank's loan to Borrower in the amount of $4,600,000.00 (the "Loan").

B.     The Note is secured by, among other security: (i) the Security Instrument (as defined in the Note) encumbering certain property (the " Property") located in Middlesex County, Massachusetts (the "State"); and (ii) the Other Security Documents (as defined in the Security Instrument). The Note, the Security Instrument and the Other Security Documents are hereinafter collectively referred to as the "Loan Documents".

C.     As a condition to making the Loan, PNC Bank has required that Borrower deposit the Escrow Funds (hereinafter defined) with PNC Bank pursuant and subject to the terms of this Agreement.

NOW, THEREFORE, in consideration of the premises and the due performance of the commitments and agreements hereinafter set forth, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.     Escrow. Borrower shall establish and maintain an escrow of funds with PNC Bank pursuant to the terms of this Agreement to ensure the completion of those certain matters listed on Schedule A hereto (the " Required Matters"). The undersigned acknowledges that the Loan Documents (as defined below) are being executed and the loan funds are being disbursed in connection therewith on the express condition that Borrower will complete the Required Matters.

2.     Deposit of Escrow Funds. All amounts held by PNC Bank at any time in escrow pursuant to this Agreement are the "Escrow Funds". Concurrently with the closing of the Loan, Borrower shall deposit $150,000.00 with PNC Bank, to be held in escrow by PNC Bank according to the terms of this Agreement. The Escrow Funds shall be disbursed or applied only as specified in this Agreement.

3.     Escrow Account. PNC Bank agrees to hold all Escrow Funds in an Eligible Account (hereinafter defined) selected by PNC Bank from time to time in the exercise of its sole discretion (the "Escrow Account"). No earnings or interest on the Escrow Funds shall be payable to Borrower. The Escrow Funds shall not constitute a trust fund and may be commingled with other monies held by PNC Bank. The Escrow Account shall be held in the name of PNC Bank and shall be within its sole and exclusive control, and all funds deposited in the Escrow Account shall be for the account of PNC Bank. Except as provided herein, Borrower shall have no right to or interest in the Escrow Funds or Escrow Account and shall have no authority to withdraw Escrow Funds from the Escrow Account.

1

An "Eligible Account" shall mean either (a) an account maintained with a depository institution or trust company, the long term unsecured debt obligations of which are rated in one of the three highest rating categories by any Rating Agency (hereinafter defined) acceptable to PNC Bank at the time of any deposit therein or (b) a trust account maintained with a federally or state-chartered depository institution or trust company acting in its fiduciary capacity, subject to regulations regarding fiduciary funds on deposit similar to 12 C.F.R. Section 9.10(b). The term "Rating Agency" shall mean a nationally recognized credit rating agency (including, without limitation, Standard & Poor's Rating Group, Fitch Investors Service, L.P., Moody's Investors Service, Inc. or Duff and Phelps Credit Rating Co., and their respective successors and assigns).

4.   Permitted Investments. PNC Bank may direct the depository institution maintaining the Escrow Account to invest the Escrow Funds in one or more of the following obligations or securities (each a "Permitted Investment") having, at the time of purchase, the required ratings, if any, provided for below:

a.   Direct obligations of, or guaranteed as to timely payment of principal and interest by, the United States or any agency or instrumentality thereof provided that such obligations are backed by the full faith and credit of the United States of America;

b.   Direct obligations of, or guaranteed as to timely payment of principal and interest by, FHLMC, FNMA or the Federal Farm Credit System;

c.   Demand and time deposits in or certificates of deposit of, or bankers' acceptances issued by, any bank or trust company, savings and loan association or savings bank, provided that the short-term unsecured debt obligations of such depository institution or trust company must have the highest rating available for such securities by two or more Rating Agencies acceptable to PNC Bank;

d.   Commercial or finance company paper that is rated by two or more Rating Agencies acceptable to PNC Bank in their highest short-term unsecured rating category at the time of such investment and is issued by a corporation the outstanding senior long-term debt obligations of which are then rated by two or more Rating Agencies in one of their two highest long-term unsecured rating categories;

e.   Repurchase obligations with respect to any security described in clause (a) or (b) above entered into with a bank or trust company, savings and loan association or savings bank, provided that the short-term unsecured debt obligations of such depository institution or trust company must have the highest rating available for such securities by two or more Rating Agencies acceptable to PNC Bank;

f.   Units of taxable money market funds which funds are regulated investment companies, seek to maintain a constant net asset value per share and invest solely in obligations backed by the full faith and credit of the United States and repurchase agreements using full faith and credit issues as collateral and are rated in the highest rating category available by a Rating Agency acceptable to PNC Bank.

5.   Pledge and Security Interest. As additional security for the payment and performance by Borrower of all duties, responsibilities and obligations hereunder and under the Loan Documents, Borrower hereby unconditionally and irrevocably assigns, conveys, pledges, mortgages, transfers, delivers, deposits, sets over and confirms unto PNC Bank, and hereby grants to PNC Bank a security interest and a valid and perfected first lien in (a) the Escrow Funds, (b) the Escrow Account, (c) all insurance of the Escrow Account, (d) all accounts, contract rights and general intangibles or other rights and interests pertaining thereto, (e) all sums now or hereafter therein or represented thereby, (f) all replacements, substitutions or proceeds thereof, (g) all instruments and documents now or hereafter evidencing the Escrow Funds or the Escrow Account, (h) all powers, options, rights, privileges and immunities pertaining to the Escrow Funds or the Escrow Account (including the right to make withdrawal therefrom), and (i) all proceeds of the foregoing. PNC Bank may deliver notice of its interest in the Escrow Funds and Escrow Account at any time to the financial institution wherein the Escrow Account has been established, and PNC Bank shall have possession of all passbooks or other evidences of such Escrow Account.  Borrower hereby assumes all risk of loss with respect to amounts on deposit in the Escrow Account, except to the extent caused by the gross negligence or intentional misconduct of PNC Bank. Borrower hereby agrees that the advancement of Escrow Funds from the Escrow Account as set forth herein is at Borrower's direction and is not the exercise by PNC Bank of any right of set-off or other remedy upon an Event of Default (as defined in the Loan Documents). Borrower hereby waives all right to withdraw Escrow Funds from the Escrow Account, except upon full satisfaction of all amounts owing under the Loan. Borrower agrees to execute and deliver on demand any and all documentation requested by PNC Bank to further evidence or perfect such assignment, including, without limitation, Uniform Commercial Code financing statements. Borrower hereby irrevocably constitutes and appoints PNC Bank as its attorney-in-fact, with full power of substitution and transfer, to execute and deliver any and all such documentation. The power of attorney hereby granted shall be irrevocable and coupled with an interest. This Agreement shall constitute a Security Agreement under the Uniform Commercial Code as enacted in the State and upon an Event of Default, PNC Bank may exercise any or all of the remedies available at law or in equity including, without limitation, the remedies specified in this Agreement and the remedies available to a secured party following default as specified in such Uniform Commercial Code. PNC Bank and Borrower hereby acknowledge and agree that PNC Bank has a valid and perfected first priority lien on, and security interest in, any Escrow Funds now or hereafter held in the Escrow Account.

6.   Disbursement of Escrow Funds to Borrower. PNC Bank shall disburse all or part of the Escrow Funds (in the amounts set forth on Schedule A) to Borrower as provided herein upon satisfaction of the following terms and conditions:

a.   Borrower has delivered to PNC Bank an affidavit, in form satisfactory to PNC Bank, certifying that all of the Required Matters have been completed and that all costs in connection therewith have been paid, together with all documentation required by PNC Bank to evidence such completion and payment.

b.   Borrower has delivered to PNC Bank, at Borrower's cost: (i) copies of building permits, any Certificate of Occupancy or any other certificates required and issued by governmental authorities in connection with any of the Required Matters; and (ii) if required by PNC Bank, an endorsement to PNC Bank's loan policy of title insurance obtained in connection

with the Loan insuring PNC Bank against any mechanic's liens in connection with such Required Matters.

c.    Borrower has delivered to PNC Bank such other documents as PNC Bank shall reasonably require to confirm the satisfaction of the conditions contained herein and the completion of the Required Matters.

d.    Disbursement of the Escrow Funds shall not be requested until all of the Required Matters have been completed to the satisfaction of PNC Bank.

e.    No Event of Default exists as of the date of Borrower's request for a disbursement or the actual date of such a disbursement.

f.    PNC Bank shall have the right, but not the obligation, at Borrower's cost and expense, to inspect the Property and/or to have the documentation regarding such Required Matters reviewed to verify that such Required Matters have been completed in a good and workmanlike manner and are otherwise acceptable to PNC Bank.

g.    Within 15 days after Borrower submits to PNC Bank a request for a disbursement, the related supporting documentation and the required Disbursement Fee (hereinafter defined), PNC Bank shall either (a) advise Borrower of any additional information needed to satisfy the requirements hereof for the requested disbursement; or (b) shall disburse the requested disbursement amount to Borrower. PNC Bank shall have no obligation to disburse Escrow Funds to Borrower until all disbursement requirements herein have been satisfied.

h.    Notwithstanding anything to the contrary herein, PNC Bank shall have the right to make the disbursement jointly payable to Borrower and the person or entity being paid. In the event of such a joint disbursement, Borrower shall not be required to have paid for such work prior to requesting the reimbursement, but Borrower shall be required to have satisfied all the other conditions of this Agreement for such disbursement.

7.    <u>Disbursement Fees</u>. Borrower shall pay PNC Bank a nonrefundable fee (each, a " <u>Disbursement Fee</u>") as a condition to each disbursement under this Agreement as compensation for PNC Bank's review, analysis and processing of such disbursement. The Disbursement Fee shall be $200.00 for each requested disbursement.

8.    <u>Default by Borrower</u>. Any failure of Borrower to comply with the terms of this Agreement or any other Loan Document shall be an Event of Default, and shall entitle PNC Bank to pursue any and all remedies available to it pursuant to this Agreement, any other Loan Document, at law or in equity. Without limiting the foregoing, upon the occurrence and during the continuation of an Event of Default, PNC Bank shall have the right, but not the obligation, without notice or demand on Borrower: (a) to withdraw any or all of the Escrow Funds and to disburse and apply the same, after deducting all costs and expenses of safekeeping, collection and delivery (including, but not limited to, attorney fees, costs and expenses) to the obligations of Borrower hereunder or under any Loan Document in such manner as PNC Bank shall deem appropriate in its sole discretion; (b) to complete any such acts, in the Borrower's stead, in such manner and to the extent PNC Bank deems necessary

to fulfill the purpose of this Agreement; (c) to exercise any and all rights and remedies of a secured party under any applicable Uniform Commercial Code; and (d) to exercise any other remedies available at law or in equity. No such use or application of the Escrow Funds shall be deemed to cure any Event of Default. Any disbursement made by PNC Bank shall continue to be part of the Loan and secured by the Loan Documents. No further direction or authorization from Borrower shall be necessary to warrant such direct disbursement by PNC Bank and all such disbursements shall satisfy the obligation of PNC Bank hereunder and shall be secured by the Loan Documents as fully as if made directly to Borrower.

9.    Indemnity. Borrower represents and warrants to PNC Bank that as of the date hereof, complete and final payment has been made for all construction, repairs or new improvements made to the Property and there are no liens or outstanding claims for which a lien could be recorded against the Property. Borrower hereby indemnifies and holds PNC Bank harmless against all claims, losses, costs, damages and expenses (including attorney fees), which PNC Bank may incur arising from the inaccuracy of the foregoing representation and warranty, any breach by Borrower of this Agreement, any action taken by PNC Bank hereunder and/or any and all claims and demands asserted against PNC Bank arising out of this Agreement; excepting, however, those based upon its willful misconduct or gross negligence. The amount of any such claims, losses, costs, damages and expenses, with interest thereon at the Default Rate (as defined in the Note), shall be payable by the Borrower immediately upon demand and, if not so paid, may be reimbursed by withdrawal from the Escrow Account.

10.    Disbursement of Disputed Escrow Funds. In the event any adverse claims are made upon the Escrow Funds, then, at PNC Bank's option: (a) PNC Bank shall not deliver the Escrow Funds to any person, shall refuse to comply with any claims on it and shall continue to hold the Escrow Funds until (i) PNC Bank, Borrower and any other person who may have asserted a claim upon the Escrow Funds shall agree in writing to a delivery of the Escrow Funds, in which event PNC Bank shall then deliver the Escrow Funds in accordance with such written agreement, or (ii) PNC Bank receives a certified copy of a final and nonappealable judgment or order of a court of competent jurisdiction directing the delivery of the Escrow Funds, in which event PNC Bank shall then deliver the Escrow Funds in accordance with such judgment or order; or (b) if PNC Bank shall receive a written notice advising that litigation over the Escrow Funds has been commenced, PNC Bank may deposit the Escrow Funds with the Clerk of the Court in which such litigation is pending; or (c) PNC Bank may take affirmative steps (i) to substitute for itself an impartial party reasonably satisfactory to PNC Bank and Borrower, (ii) to deposit the Escrow Funds with a court of competent jurisdiction, or (iii) to commence an action for interpleader, the costs thereof to be borne by Borrower. The provisions of this Section shall not apply to any dispute between Borrower and PNC Bank.

11.    Limitation of Liability of PNC Bank.

a.    PNC Bank shall have no liability to any person based upon its errors in judgment, its performance of its duties under this Agreement, any claimed failure to perform its duties hereunder, any action taken or omitted in good faith or any mistake of fact or law; provided that PNC Bank shall be liable for damages arising out of its gross negligence or intentional misconduct. PNC Bank shall be automatically released from all obligation and liability

hereunder upon its disbursement, delivery or deposit of the Escrow Funds in accordance with the provisions of this Agreement.

b.   The duties of PNC Bank in its capacity as escrow agent hereunder are purely ministerial. In such capacity, PNC Bank is acting as a stakeholder for the accommodation of Borrower and is not responsible or liable in any manner whatsoever related to any signature, notice, request, waiver, consent, receipt or other document or instrument pursuant to which PNC Bank may act, including, without limitation, terms and conditions, sufficiency, correctness, genuineness, validity, form of execution, or the identity, authority or right of any person executing or depositing the same.

c.   PNC Bank shall not be responsible for the validity or sufficiency of any cash, instruments, wire transfer or any other property delivered to it hereunder, for the value or collectibility of any check or other instrument so delivered or for any representation made or obligations assumed by Borrower or any other party to the Loan Documents. Nothing herein contained shall be deemed to obligate PNC Bank to deliver any cash or any other funds or property referred to herein, unless the same shall have first been received by PNC Bank pursuant to this Agreement.

d.   In no event whatsoever shall PNC Bank be liable for any losses related to the Escrow Funds resulting from an investment of Escrow Funds made in accordance with the terms hereof.

e.   Upon the assignment of the Loan and the Loan Documents by PNC Bank, any Escrow Funds then held by PNC Bank shall be turned over to the assignee and all responsibility of PNC Bank with respect thereto shall be terminated.

12.   Assignment. Borrower hereby collaterally assigns to PNC Bank, as additional security for the Loan, its rights under any contract entered into by Borrower related to any matters for which reimbursement could be sought by Borrower under this Agreement. Any such contract shall provide that PNC Bank shall have the right to require performance of such contract but shall have no liability for any amounts owed by Borrower and incurred prior to the date PNC Bank exercises its rights herein provided to require performance.

13.   Notices. Any notice, consent, request or other communication required or permitted hereunder shall be in writing and shall be deemed properly given if delivered in accordance with the notice requirements contained in the Note.

14.   Governing Law. The terms and provisions hereof shall be governed by and construed in accordance with the laws of the State.

15.   Binding Agreement. This Agreement is freely assignable by PNC Bank, its successors, endorsees and assigns, and shall be binding upon the heirs, executors, administrators, personal representatives, successors and assigns of the parties hereto, including any assignee of the Note or any of the other Loan Documents; provided, however, the foregoing shall not be deemed or construed to (a) permit the assignment by Borrower of any of Borrower's rights or obligations hereunder, or (b) confer any right, title, benefit, cause of action or remedy upon any person or entity not a party hereto except for assignees of the Note or any of the other Loan Documents.

MCF 537
Outstanding Issues Escrow
Last Revised 1/29/07

16. <u>Captions.</u> The captions, headings and arrangements used in this Agreement are for convenience only and do not in any way affect, limit, amplify or modify the terms and provisions hereof.

17. <u>Rules of Construction.</u> The parties acknowledge that each party and its counsel have reviewed and have had input in the drafting of this Agreement. The parties hereby agree that normal rules of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any amendments or exhibits hereto. For purposes of this Agreement the word "person" shall include an individual, corporation, limited liability company, limited liability partnership, limited partnership, partnership, trust, unincorporated association, government, governmental authority and any other entity.

18. <u>No Third Party Beneficiaries.</u> No person not a party to this Agreement shall have any third party beneficiary claim or other right hereunder or with respect hereto.

19. <u>Amendment.</u> This Agreement may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or PNC Bank, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

20. <u>Counterparts.</u> This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same Agreement.

21. <u>Disposition of Escrow Funds on Repayment of Loan.</u> At such time as the "Debt" (as defined in the Security Instrument), is paid in full, PNC Bank shall return any funds then on deposit in the Escrow Account to Borrower.

22. <u>Remedies Not Exclusive.</u> PNC Bank's rights and remedies under this Agreement are cumulative and in addition to every other right or remedy now or hereafter existing under any Loan Document, at law or in equity. No delay or omission of PNC Bank to exercise any of its rights or powers shall impair or be a waiver of such right or power. The resort to any remedy hereunder shall not prevent the concurrent or subsequent exercise of any other remedy PNC Bank may have.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective the day and year set forth above.

Witness                                    "Borrower"

                                           Robert J. Depietri, Sr. and Robert J. Depietri, Jr., as
                                           trustees of the Rosewood VIII Real Estate Trust

*Eileen Botter*                            By: *Robert J Depietri Sr*
                                           Name: Robert J. Depietri, Sr.
                                           Title: Trustee
                                           Taxpayer Id. No.: 04-6524353

**[BORROWER SIGNATURE PAGE FOLLOWS]**

MCF 537
Outstanding Issues Escrow
Last Revised 1/29/07

Witness                                    "Borrower"

                                           Robert J. Depietri, Sr. and Robert J. Depietri, Jr., as
                                           trustees of the Rosewood VIII Real Estate Trust

                                           By: _____
                                           Name: Robert J. Depietri, Jr.
                                           Title: Trustee
                                           Taxpayer Id. No. 04-6524353

### [LENDER SIGNATURE PAGE FOLLOWS]

Witness:

*Stephanie Cook*

PNC BANK:

PNC Bank,
National Association

By: *[signature]*
Name:   Jeannette I. Butler
Title:  Vice President

SCHEDULE A
Schedule Of Required Matters

1.      The parking lot at the Property is repaired as required by the Property Condition Report. The estimated cost to repair the parking lot is $50,000.00.

2.      The roof at the Property is repaired as required by the Property Condition Report. The estimated cost to repair the roof is $75,000.00.

3.      The Property has achieved a debt service coverage ratio,  as determined by PNC Bank in its sole discretion, equal to or greater than 1.20 to 1.

Provided the terms and conditions contained in Section 6 are satisfied, $75,000.00 of the Escrow Funds shall be released upon completion of both items 1 and 2 above.

The Property Condition Report shall mean a certain Physical Due Diligence Inspection Report dated October 5, 2006 prepared by MSKM Architects.

MCF 537
Outstanding Issues Escrow
Last Revised 1/29/07

11

# EXHIBIT

# D

 Sandra K Cook/Midland/PNC

12/07/2009 12:19 PM

To   oiarussi@conversent.net
cc
bcc

Subject   Fw: #940953050 63-65 South Street- Hopkinton Repair Reserve Request

Hi Ozzie,

Per our phone conversation this day...I'm cancelling your repair request.

Please feel free to contact us with any questions you may have when resubmitting in the future.

Thank you,

Midland Loan Services, Inc.
A PNC Real Estate company
Sandra Cook
Senior Reserve Administrator
1-800-327-8083 (toll free)
1-913-253-9577 (direct line)
1-913-253-9001 (fax)
sandra.cook@midlandls.com
----- Forwarded by Sandra K Cook/Midland/PNC on 12/07/2009 12:16 PM -----

 Sandra K Cook/Midland/PNC

11/24/2009 09:23 AM

To   oiarussi@conversent.net
cc

Subject   Fw: #940953050 63-65 South Street- Hopkinton Repair Reserve Request

Good Morning Mr. Larusi,

Wanted to touch base as I've yet to hear from you...please advise.

Thank you,

Midland Loan Services, Inc.
A PNC Real Estate company
Sandra Cook
Senior Reserve Administrator
1-800-327-8083 (toll free)
1-913-253-9577 (direct line)
1-913-253-9001 (fax)
sandra.cook@midlandls.com
----- Forwarded by Sandra K Cook/Midland/PNC on 11/24/2009 09:22 AM -----

 Sandra K Cook/Midland/PNC

11/10/2009 08:11 AM

To   oiarussi@conversent.net
cc

Subject   Fw: #940953050 63-65 South Street- Hopkinton Repair Reserve Request

 **PNC**  Sandra K Cook/Midland/PNC
11/24/2009 09:23 AM

To  oiarussi@conversent.net
cc
bcc
Subject  Fw: #940953050 63-65 South Street- Hopkinton Repair
Reserve Request

Good Morning Mr. Larusi,

Wanted to touch base as I've yet to hear from you...please advise.

Thank you,

Midland Loan Services, Inc.
A PNC Real Estate company
Sandra Cook
Senior Reserve Administrator
1-800-327-8083 (toll free)
1-913-253-9577 (direct line)
1-913-253-9001 (fax)
sandra.cook@midlandls.com
----- Forwarded by Sandra K Cook/Midland/PNC on 11/24/2009 09:22 AM -----

 **PNC**  Sandra K Cook/Midland/PNC
11/10/2009 08:11 AM

To  oiarussi@conversent.net
cc
Subject  Fw: #940953050 63-65 South Street- Hopkinton Repair
Reserve Request

Good Morning Mr. Larusi,

Wanted to touch base as I've yet to hear back from you regarding my previous e-mail...please advise.
Please also note we normally do not hold requests over 30 days.

Thank you,

Midland Loan Services, Inc.
A PNC Real Estate company
Sandra Cook
Senior Reserve Administrator
1-800-327-8083 (toll free)
1-913-253-9577 (direct line)
1-913-253-9001 (fax)
sandra.cook@midlandls.com
----- Forwarded by Sandra K Cook/Midland/PNC on 11/10/2009 08:10 AM -----

Sandra K Cook/Midland/PNC

10/27/2009 11:17 AM

To  oiarussi@conversent.net
cc
Subject  #940953050 63-65 South Street- Hopkinton Repair Reserve
Request

 **PNC**

| | | |
|---|---|---|
| Sandra K Cook/Midland/PNC | To | oiarussi@conversent.net |
| 11/10/2009 08:11 AM | cc | |
| | bcc | |
| | Subject | Fw: #940953050 63-65 South Street- Hopkinton Repair Reserve Request |

Good Morning Mr. Larusi,

Wanted to touch base as I've yet to hear back from you regarding my previous e-mail...please advise. Please also note we normally do not hold requests over 30 days.

Thank you,

Midland Loan Services, Inc.
A PNC Real Estate company
Sandra Cook
Senior Reserve Administrator
1-800-327-8083 (toll free)
1-913-253-9577 (direct line)
1-913-253-9001 (fax)
sandra.cook@midlandls.com
----- Forwarded by Sandra K Cook/Midland/PNC on 11/10/2009 08:10 AM -----

| | | |
|---|---|---|
| Sandra K Cook/Midland/PNC | To | oiarussi@conversent.net |
| 10/27/2009 11:17 AM | cc | |
| | Subject | #940953050 63-65 South Street- Hopkinton Repair Reserve Request |

Good Morning Mr. Iarusi,

I've reviewed your disbursement request and need to address the following before processing:

1) Please note the loan is due for the October/2009 payment...the loan is required to be current before funds (pending approval) may be released.
2) It appears there are late charges due in the amount of $17,876.00...please advise when these will be satisfied.
3) Please submit 2008 year end financials and updated financials thru September of this year.
4) Please submit a current rent roll.
5) Please submit a copy of the contract with scope of work from Capeway Roofing Systems, Inc.
6) Please submit a lien waiver from Capeway Roofing Systems, Inc.
7) Please note there are several reserve accounts set up for this loan, which include an environmental reserve, deferred maintenance reserve, & a repair (outstanding issue) reserve set up at closing for required repairs/remediation to be completed within certain time frames as specified in said reserve agreements. I'm attaching the portion of the reserve agreements with regards to the specific required repairs.



DOC2009102709716.pdf
Please note the following with regards to each reserve:
a) Repair Reserve(outstanding issues)/ per Schedule A (attached) both items 1 and 2 are to be completed

Sandra K Cook/Midland/PNC     To   oiarussi@conversent.net

10/27/2009 11:17 AM       cc

bcc

Subject   #940953050 63-65 South Street- Hopkinton Repair Reserve Request

Good Morning Mr. Iarusi,

I've reviewed your disbursement request and need to address the following before processing:

1) Please note the loan is due for the October/2009 payment...the loan is required to be current before funds (pending approval) may be released.

2) It appears there are late charges due in the amount of $17,876.00...please advise when these will be satisfied.

3) Please submit 2008 year end financials and updated financials thru September of this year.

4) Please submit a current rent roll.

5) Please submit a copy of the contract with scope of work from Capeway Roofing Systems, Inc.

6) Please submit a lien waiver from Capeway Roofing Systems, Inc.

7) Please note there are several reserve accounts set up for this loan, which include an environmental reserve, deferred maintenance reserve, & a repair (outstanding issue) reserve set up at closing for required repairs/remediation to be completed within certain time frames as specified in said reserve agreements. I'm attaching the portion of the reserve agreements with regards to the specific required repairs.



DOC20091027090716.pdf

Please note the following with regards to each reserve:

a) Repair Reserve(outstanding issues)/ per Schedule A (attached) both items 1 and 2 are to be completed before release of funds relating to the roof and the parking lot. Additional documentation regarding the parking lot repairs will be required before consideration of the release of funds for the roof. If you will please provide the status of said repairs and a time line regarding the completion of any remaining repairs with regards to this reserve account.

b) Deferred Maintenance Reserve (Schedule B)/please provide the status of required repairs and a time line regarding the completion of any remaining repairs. Please note these repairs were to be completed within 6 months of closing. If repairs are not complete, an extension will need to be requested. You may address that request to Paula Seay, our department manager.

c) Environmental Escrow Reserve/ please provide the status of "remediation"...if remediation is not complete, please provide a time line of completion. Please note these items were to be complete within 3 years of closing. If needed, an extension may be requested with regards to said remediation. You would need to address that request to Paula Seay, our department manager.

8) Please see attached letter dated 2/20/209 with regards to the inspection of 11/19/2008 and noted deficiencies. Per the letter..if you would please provide a written response regarding plans for curing the deferred maintenance.



DOC20091027110649.pdf

Kindly e-mail or fax the above to my attention @ 913-253-9001.

Please feel free to contact me with any questions you may have concerning the above.

Sincerely,

Midland Loan Services, Inc.
Sandra Cook
Senior Reserve Administrator
1-800-327-8083 (toll free)
1-913-253-9577 (direct line)
1-913-253-9001 (fax)
sandra.cook@midlandls.com