UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| U.S. BANK NAT. ASSOC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 10-10920-LTS |
| ROBERT J. DePIETRI, SR., et al., | ) ) ) | |
| Defendants. | ) ) | |

ORDER ON MOTION FOR APPOINTMENT OF RECEIVER

August 18, 2010

SOROKIN, M.J.

The Plaintiff, the U.S. Bank National Association as Trustee for Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities, requests the appointment of a receiver to manage and sell the property held by the Defendants, the Trustees of the Rosewood VIII Real Estate Trust.

This is an action to recover over $5,000,000 allegedly owed to the Plaintiff by the Defendants under a promissory note. The Mortgage and Security Agreement (Docket # 1-2) provides:

> (A) Upon the occurrence of any Event of Default, Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Mortgaged Property, including, without limitation, the following actions:

1

>(I) declare the entire Debt to be immediately due and payable;
>
>(ii) institute proceedings to foreclose this Security Instrument . . .
>
>(vi) apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt or th solvency of Borrower, any Guarantor or of any person, firm or other entity liable for payment of the Debt;
>
>(vii) enforce Lender's interest in the Leases and Rents and enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefore, and thereupon Lender may: (A) use operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Mortgaged Property in such manner and conduct the business thereat; (B) complete any construction on the Mortgaged Property in such manner and form as Lender deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property; (D) exercise all rights and powers of Borrower with respect to the Mortgaged Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all earnings, revenues, rents, issues, profits and other income of the Mortgaged Property and every part thereof; and (E) apply the receipts from income of the Mortgaged Property to the payment of the Debt, after deducting therefrom all expenses (including reasonable attorneys fees) incurred in connection with the aforesaid operations and all accounts necessary to pay the Taxes, assessments, Insurance Premiums and Other Charges in connection with the Mortgaged Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees . . . .

Docket #1-2 at 23 ¶ 20.

The Parties also entered into an escrow agreement encompassing not only matters such as taxes etc., but two "Required Matters" concerning needed repairs for which the Plaintiff deposited $150,000 in escrow. Docket #25-1 at ¶ 2. Both the roof and the parking lot required repairs with estimated costs of $75,000 and $50,000, respectively. Id. at 12.

The Defendants replaced the roof and, in September, 2008, sought the release of funds held in escrow for that purpose. The funds were not released. At that time, the Defendants were current on their mortgage payments. The Defendants remained current until September, 2009, when they failed to make the required monthly payment. It appears that since that time, they have made the required payment every month. In October, 2009, the Plaintiffs renewed their request for release of funds held in escrow for the completed roof repair. The funds, however, were not released.

On March 26, 2010, the Plaintiff allocated the February and March, 2010, payments, totaling $73, 682.46, to the Tax Escrow held by the Plaintiff (Docket #10-4) and has filed this lawsuit seeking foreclosure of the mortgage and the pending motion for the appointment of a receiver.

The Plaintiff grounds its motion for a receiver on two theories: (1) that it is entitled to the receiver under the contract; and, (2) that the Defendants are not maintaining the property properly. Regarding the second theory, the Plaintiff relies upon the affidavit of Simon Lau, as asset manager, in which he reports that Colliers Meredith & Grew evaluated the building in March and June of 2010, and observed ten material deficiencies:

    a) the atrium ceiling has many water stained tiles, suggesting active roof leaks;

    b) the elevator certificate has expired;

    c) certificates for the fire extinguishers have expired;

    d) vacant offices are unlocked;

    e) a loading dock has been destroyed and debris from the removal sits on the lot;

    f) a handicap/delivery ramp has been destroyed;

    g) all of the loading docks show damage;

    h) a railing has been removed and is lying on the ground;

    i) the outer walls of the atrium are decayed and molding is missing and on the ground;

    j) the parking lot is in poor condition.

Docket #17-1 at ¶ 4.

At the outset, the Court notes that the report of Colliers Meredith & Grew is not itself before the Court, nor has it been provided to the Defendants. In any event, the record does not support the allegation of deficiencies in the maintenance of the building, according to the evidence from Defendants. The small number of stained tiles reflect old water damage as they predate the replacement of the roof and are purely cosmetic in nature. Docket #25 at 7.[1] The elevator certificates remain valid as the inspections are pending. The fire extinguisher certificates are not expired. The Defendants represent that the unlocked offices have now been locked. The parking lot, according to the report of a July 29, 2010, inspection by RHC Professional Associates, is in very good condition. Docket #25 at 4. According to Defendants' affidavits, a major tenant had requested removal and reconfiguring of the delivery docks and that work is now in process. Docket #25-10 at ¶ 13. An April, 2010, email from one of the Defendants to Lau states:

> The loading ramps are in the process of being rebuilt. We started that last fall. The concrete had some severe cracks and we removed such. We have held off additional work as one of the tenants is waiting on approval from corporate on expanding into that area and they need the ram a certain way. So rather than do it twice we are waiting on

---

[1] Although in an email from one of the Defendants to Lau there is also an indication there there are some stained tiles resulting from new leaks due to "problems with a section of the roof that is made of metal." Docket #25-4. The April 2010 email asserts that Defendants were waiting for an improvement in the weather before working in this area.

approval.

Docket #25-4.

In addition, the Defendants offer evidence that they have spent $230,000 on repairs and maintenance over the past three years.  Docket #25 at 9.  The evidence before the Court does not establish that the property is at risk due to an inability or unwillingness of the Defendants to maintain it properly.  There is also no evidence of fraud, imminent danger of the loss of the property, the inadequacy of legal remedies, that the building is worth less than the outstanding loan amount or the other factors identified by the First Circuit as warranting appointment of a receiver.  Chase Manhattan Bank v. Turabo Shopping Ctr., Inc., 683 F.2d 25, 26-27 (1st Cir.1982) (citing CFTC v. Comvest Trading Corp., 481 F.Supp. 438, 441 (D.Mass.1979)).  In short, the Plaintiff does not prevail in its request for an appointment of a receiver (on this record, at this time) on the theory that the building is inadequately maintained.

The Plaintiff does have a stronger case for the appointment of a receiver under the language of the mortgage documents.  These documents do more than merely confer a right  the Plaintiff already had to apply for the appointment of a receiver in that the documents authorize the Plaintiff to take many of the measures a receiver would take.  Docket #1-2 at ¶ 20.  The language, however, is not as strong as the language in Pioneer Capital Corp. v. Environamics Corp, 2003 WL 345349 (D.Me.2003 ), in which the borrower agreed that the secured party's "right to appointment of a receiver is a bargained-for contractual remedy, and is not intended to be circumscribed by principles of equity."  Id. at *6. Moreover, in this case, the building is not at risk. See supra.  The Plaintiff suggests that the note exceeds the value of the property, however, there is no evidence on that issue and the Parties dispute whether or not the Plaintiff has breached

by failing to disburse escrow funds for the roof prior to the Defendants' failure to make one monthly payment.

      Accordingly, the Motion for the Appointment of a Receiver (Docket #3) is DENIED.

                                                   /s/ Leo T. Sorokin
                                                  Leo T. Sorokin
                                                  United States Magistrate Judge